IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Patty Durand**, an individual, **Elizabeth Pinder**, an individual, **Brian Carney**, an individual, and **Elizabeth Rodenroth**, an individual,<br><br>      Plaintiffs,<br><br> vs.<br><br>**Brad Raffensperger**, in his official capacity as Secretary of State of the State of Georgia,<br><br>      Defendant. | Case No. _____<br><br><br><br>**Verified Complaint** |

## Nature of the Case

1. This is a constitutional challenge to Georgia's one-year residency requirement for members of Georgia's Public Service Commission. O.C.G.A. § 46-2-1(b). That requirement is unconstitutional as applied to Patty Durand, a candidate for Public Service Commissioner in District 2, because the Georgia General Assembly redrew district lines on the eve of the qualifying period to exclude Durand specifically.

2. The plaintiffs are Durand, whose qualification under the residency requirement is currently subject to challenge, and three of Durand's supporters. They allege that the application of Georgia's residency requirement to Durand unconstitutionally burdens their rights under the Equal Protection Clause and the First and Fourteenth Amendments to the U.S. Constitution. They seek declaratory and injunctive relief prohibiting Secretary of State Brad Raffensperger from enforcing the residency requirement against Durand in the 2022 election.

## Jurisdiction and Venue

3. This Court has original jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343(a)(3)-(4)

4. Venue is proper in this Court under 28 U.S.C. §§ 90(a)(2) and 1391(b).

## Parties

5. Patty Durand is a registered voter and resident of Rockdale County. She is a candidate for Public Service Commissioner in District 2.

6. Elizabeth Pinder is a registered voter and resident of Gwinnett County. She is a Durand supporter and wants to vote for Durand in the 2022 primary and general elections.

7. Brian Carney is a registered voter and resident of Clarke County. He is a Durand supporter and wants to vote for Durand in the 2022 primary and general elections.

8. Elizabeth Rodenroth is a registered voter and resident of Bibb County. She is a Durand supporter and wants to vote for Durand in the 2022 primary and general elections.

9. Defendant Brad Raffensperger is the Secretary of State of the State of Georgia (hereinafter, the "Secretary"). He is the chief election official of the State of Georgia and is responsible for enforcing the residency requirement for Public Service Commission candidates. O.C.G.A. § 21-2-5. He is sued in his official capacity only.

## Background

10. The Georgia Public Service Commission dates back to 1879. The jurisdiction, powers, and duties of the Public Service Commission are prescribed by state law, and they include broad governmental authority to supervise and regulate common carriers, railroads, and

public utilities. O.C.G.A. ¬ß 46-2-1 et seq. Among many other duties, the Commission regulates the rates that Georgians may be charged by electric, natural gas, and telephone companies.

11. Today, the Public Service Commission is a five-member body created under the Georgia Constitution. Ga. const. art. IV, § 1, para. I

12. Georgia law provides that commissioners are elected statewide for six-year terms. O.C.G.A. § 46-2-1(a).

13. Elections for commissioners are held on a partisan basis.

14. In 1998, the Georgia General Assembly added a requirement that commissioners must reside within specific districts and must have resided in that district "for at least 12 months prior to election thereto." O.C.G.A. § 46-2-1(b).

15. Commissioner elections are staggered, and District 2 is up for election in 2022. O.C.G.A. § 46-2-1(d).

16. The incumbent commissioner from District 2 is Republican Tim Echols, and he is running for re-election.

## Durand's Candidacy

17. Durand has been a Georgia resident for more than 26 years.

18. From January 2011 until February 2021, Durand was the executive director of the Smart Grid Consumer Collaborative, a nonprofit organization working to promote the benefits of creating a next-generation energy infrastructure in the United States. As part of her work, Durand often interacted with commissioners and their staff. Durand is well known in the energy industry.

19. Durand stepped down from her position in February 2021 to become a Democratic candidate for Public Service Commissioner in District 2.

20. Durand moved to Gwinnett County, which was in District 2, in June 2021, and she formally launched her campaign for Public Service Commissioner on July 1, 2021.

21. Durand issued a media advisory announcing her candidacy, and her candidacy was reported in at least five news media outlets across Georgia.

22. Durand's candidacy was also reported in the *Atlanta Journal Constitution*'s online political newsletter "The Jolt", which is widely read by elected officials and political followers.

23. Durand posted her candidacy on many social media platforms including Twitter, LinkedIn, Facebook and Instagram.

24. Durand also engaged in other typical campaign activities: soliciting friends, neighbors, and colleagues for donations; writing blogs, newsletters and social media posts about Georgia's energy situation and her hopes and plans as a commissioner; speaking on podcasts about her energy background for this office and vision for Georgia if elected; hiring campaign staff; attending Democratic party events, for example.

25. In January 2022, Durand filed a campaign-finance report showing that she had raised more than $110,000 for her campaign.

## Durand is Drawn Out of District 2

26. In February 2022, the Georgia General Assembly redrew the Public Service Commission's residency districts with the purpose of excluding Durand from District 2.

27. It was not necessary to redraw the Public Service Commission's residency districts to comply with the one-person-one-vote principle following the release of the 2020 Census, because the one-person-one-vote principle does not apply to residency districts. *See Dallas County, Ala. v. Reese*, 421 U.S. 477, 480-81 (1975).

28. Even if the one-person-one-vote principle did apply to the Public Service Commission's residency districts, it would not have been necessary to redraw the districts because the existing districts were not malapportioned. According to population data provided to the General Assembly by the Legislative and Congressional Reapportionment Office, the total deviation from equality in the existing districts was less than the 10 percent that the Supreme Court has held to be presumptively constitutional.

29. On February 7, 2022, Republican Senator John F. Kennedy introduced a bill, known as Senate Bill 472 ("SB 472"), that redrew the residency districts for the Public Service Commission. He introduced the bill at the request of one or more members of the Public Service Commission.

30. The residency districts set forth in SB 472 were drawn at the direction of one or more members of the Public Service Commission with the oversight of Gina Wright, director of the Legislative and Congressional Reapportionment Office.

31. The residency districts set forth in SB 472 remove from District 2 approximately 66 percent of the prior District 2's population,

including all of Gwinnett County—which alone comprised approximately 44 percent of the prior District 2's population.

32. The Senate Reapportionment and Redistricting Committee, chaired by Senator Kennedy, held a hearing on SB 472 on February 16. Public Service Commission Chair Tricia Pridemore presented the bill to the committee. The committee recommended passage of the bill by a vote of 8 to 3.

33. On February 24, Senator Kennedy presented SB 472 on the floor of the Senate. After vigorous debate, the bill passed on a party-line vote.

34. On March 2, 2022, the House Legislative and Congressional Reapportionment Committee held a hearing on SB 472. Senator Kennedy, accompanied by Commissioner Pridemore, presented the bill.

35. At the hearing, Commissioner Pridemore testified that "[e]very ten years, the Public Service Commission is required by law to review our map and put forth a new one." That testimony is not true.

36. Also at the hearing, Democratic Representative Kim Alexander offered a substitute map for the residency districts in SB 472.

House Minority Leader James Beverly presented the map to the committee.

37. Leader Beverly testified that there was no need to redraw the residency districts because the one-person-one-vote requirement does not apply and because, even if it did, the existing districts were already within constitutional limits.

38. The Democratic alternative map presented by Leader Beverly complied with the House's redistricting criteria better than SB 472. It would have shifted far fewer counties and better maintained the cores of the existing districts. It had a lower population deviation. It split fewer cities.

39. The committee rejected the Democratic substitute on a party-line vote and then recommended passage of SB 472 on a party-line vote.

40. On March 4, 2022, SB 472 was considered on the House floor. After vigorous debate, the bill passed on a party line vote.

41. The Governor signed the bill on the same day, which was the last business day before the beginning of Georgia's candidate qualification period on Monday, March 7.

### The Secretary Challenges Durand's Qualifications

42. Durand established residency in Rockdale County, Georgia, on or about March 6, 2022. Rockdale is in the new District 2.

43. Durand filed paperwork to qualify as a candidate for Public Service Commissioner in District 2 on March 10, 2022.

44. On April 28, 2022, the Secretary of State's office notified Durand that the Secretary of State had initiated a challenge to her qualifications to be a candidate for District 2 based on the residency requirement set forth in O.C.G.A. § 46-2-1(b).

45. In accordance with state law, the Secretary referred the matter to the Office of State Administrative Hearings ("OSAH") for review by an administrative law judge, and he requested an expedited hearing.

46. The Secretary's challenge to Durand's qualifications has been docketed by OSAH as *Raffensperger v. Durand,* 2225324-OSAH-SECSTATE-CE-122-Barnes, and a hearing on the matter is currently set for Thursday, May 12, at 9:30 a.m.

47. Once the administrative law judge issues her decision, the Secretary of State must then determine whether Durand is qualified.

48. If the Secretary determines prior to the May 24 primary that Durand is not qualified, he must post signs at all polling places advising voters of the disqualification and that votes for her will not be counted.

## Claim One

49. Georgia's durational residency requirement for candidates for the Public Service Commission, as applied to Durand, violates rights guaranteed to the plaintiffs by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, as enforced by 42 U.S.C. § 1983.

## Claim Two

50. Georgia's durational residency requirement for candidates for the Public Service Commission, as applied to Durand, violates rights guaranteed to the plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution, as enforced by 42 U.S.C. § 1983.

## Relief

51. A real and actual controversy exists between the parties.

52. The plaintiffs have no adequate remedy at law other than this action for declaratory and equitable relief.

53. The plaintiffs are suffering irreparable harm as a result of the violation complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

WHEREFORE, the plaintiffs respectfully pray that this Court:

(1) enter a declaratory judgment that Georgia's durational residency requirement for Public Service Commissioners, as applied to Durand, violates rights guaranteed to the plaintiffs by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and by the First and Fourteenth Amendments of the United States Constitution;

(2) enjoin the Secretary of State from enforcing Georgia's durational residency requirement for Public Service Commissioners against Durand;

(3) award the plaintiffs the costs of this action together with their reasonable attorneys' fees under 42 U.S.C. § 1988; and

(4) retain jurisdiction of this action and grant the plaintiffs any further relief which may in the discretion of the Court be necessary and proper.

Respectfully submitted this 5th day of May, 2022.

**/s/ Bryan L. Sells**
Georgia Bar No. 635562
Attorney for the Plaintiffs
The Law Office of
  Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

## Verification of Complaint

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that the allegations in the foregoing Verified Complaint are true and correct to the best of my knowledge, information, and belief.

Executed this 5th day of May, 2022.

_____*Patty Durand*_____
Patty Durand